ANDREW J. CARTAN, petitioner-appellant,

*v.*

SARAH CARTAN, defendant-appellee, and PATRICK J. DEVLIN, intervening defendant.

[Submitted July 11th, 1921. Decided November 14th, 1921.]

1. To justify a decree for divorce on the ground of adultery, the evidence of the defendant's guilt must be clear and satisfactory. A full and explicit denial of the charge by the defendant, and her alleged *particeps criminis*, should be regarded as decisive in a case of doubt.

2. Letters written to a person, though evidence against him for some purposes, are not evidence of the truth of their contents unless besides the mere possession of the letters there is testimony from which acquiescence in the truth of their contents can be inferred.

Cartan v. Cartan.                          93 N. J. Eq.

3. Where a husband in a petition for divorce on the ground of adultery charges his wife with separate acts of adultery on one thousand eight hundred and five consecutive days, and upon demand for a bill of particulars cuts that down to eight, mostly indefinite, and upon the hearing to one alone, when practically all that time he and his wife had been living together as an ordinarily happy married couple, such action is. to say the least, censurable.

On appeal from the court of chancery.

*Messrs. Wilson & Smock,* for the petitioner-appellant.

*Messrs. John S. Applegale & Son,* for the defendant-appellee.

*Mr. Jacob R. Lefferts* and *Mr. Merrill Lane,* for the intervening defendant.

The opinion of the court was delivered by

WILLIAMS, J.

This is an appeal from a decree of the court of chancery of New Jersey advised by Hon. John E. Foster, vice-chancellor, denying an absolute divorce on the ground of adultery sought by Andrew J. Cartan, petitioner, against his wife, Sarah Cartan, defendant.

The petition was filed December 13th, 1918, the answer of the defendant denying the charges of adultery not until June 18th, 1919, the delay being due to attempts on the part of the solicitors of the parties to effect a reconciliation.

The petition was dismissed in the court of chancery for failure of petitioner to sustain the truth of the allegations in his petition.

The petitioner charges defendant committed adultery with Patrick J. Devlin "on the first day of January, 1914, and on each day of each month of the said year 1914, and of the years 1915, 1916, 1917 and 1918, to the date of the verification hereof" (December 11th, 1918), "in the city of New York, at the borough of Matawan aforesaid, and at various places in the county of Monmouth and elsewhere in the State of New Jersey."

A bill of particulars was demanded by the defendant and furnished April 21st, 1919, in which petitioner abandons the averments of his petition as to time and place of the adulterous acts, and in the place thereof specified one adulterous act committed by the parties in the city of New York, November 23d, 1914, the precise place being unknown; two others committed in the borough of Matawan in the latter part of May or June, 1916, the precise dates being unknown, but the acts of adultery being committed in or near an outbuilding located in the back yard of petitioner's home; also on two other occasions in the summer or early fall of 1915, and on three other occasions in the spring of 1916, in or near said outbuilding or other places on or near said premises.

The defendant, Patrick J. Devlin, filed his petition to intervene and was admitted as a party defendant October 6th, 1919, and filed his answer denying the charges of the petitioner. He also demanded a bill of particulars, which was furnished him October 22d, 1919. This bill is the same as the one furnished the defendant, Sarah Cartan, with the exception that as regards the occurrences in the latter part of May or June, 1916, there is added the following: "The nights aforesaid were Saturday nights. One of these nights the petitioner, with such information as he now has, believes to have been the night of May 27th, 1916." There is also an additional charge at the residence of the petitioner in the forepart of March, 1916.

On the trial of the cause application was made on the part of the defendant, Sarah Cartan, to amend the answer filed by her, so as to include the defence of condonation—in that the petitioner condoned said supposed act of adultery in that with knowledge he continued matrimonial cohabitation with said defendant between May 1st, 1918, and September 1st, 1918, at the house of the petitioner and defendant in the borough of Matawan, and that during such cohabitation and ever since the defendant has treated the petitioner with conjugal kindness. The amendment was allowed and filed December 17th, 1920.

The solicitors of the petitioner-appellant in their brief state that the issues under the pleadings and proof stand thus: "The petitioner charges adultery and the proof is directed especially

to an offence which he says occurred on or about the 27th of May, 1916, in an outbuilding on the premises then owned and occupied by him and his family in the borough of Matawan. The wife and the alleged paramour stoutly deny this charge, and the wife, in addition, sets up as already indicated, the defence of condonation."

And the vice-chancellor in his opinion says: "Notwithstanding these charges of almost daily acts of adultery, the issues presented by the proofs confine the controversy to a single act of adultery claimed to have been committed about May 27th, 1916, in the outbuilding mentioned in the pleadings and to the question of condonation."

The petitioner might be justified in making the extravagant charge of adultery daily from January 1st, 1914, to December 11th, 1918, if the defendant had left him and gone to live with the alleged paramour, and had lived with him as man and wife during that whole period; but we cannot conceive how a husband can charge his wife with separate acts of adultery on one thousand eight hundred and five consecutive days, and, upon a demand for a bill of particulars, cut that down to eight, mostly indefinite, and upon the hearing to one alone, when practically all that time he and his wife had been living together as an ordinarily happy married couple. The solicitors for petitioner state that it is quite common in divorce proceedings to allege that adultery occurred on consecutive days or numerous occasions, even though it should be determined later to confine the testimony to one or two specific incidents. In the present case it is beyond dispute that at the time the husband filed his petition he had no reason to believe that his wife had committed adultery on any of the occasions charged, in the petition or in the bill of particulars, except on May 27th, 1916. The attempt to destroy the character of his wife by the absolutely unfounded charges in the petition, reiterated to some extent in the bill of particulars, we think justifies the conclusion that he had an ulterior motive in instituting this litigation. Why he sought to destroy the character of his wife for virtue and morality in the place where they lived cannot be discovered from the testimony, but that this was his primary purpose we are justified in believing from the outra-

geous and unsupported charges spread upon the records of the court of chancery, and such action is, to say the least, censurable.

The petitioner attempts to prove that on May 27th, 1916, his wife and Devlin were seen to go separately to the outbuilding back of petitioner's house, a little after nine o'clock in the evening, and that they remained there from half to three-quarters of an hour, and we are asked to find from this fact that she and Devlin there committed adultery. We very much doubt the truthfulness of the witnesses by whom this alleged meeting is attempted to be proved, in view of the absolute denial of the defendant and Devlin.

To justify a decree for divorce on the ground of adultery, the evidence of the defendant's guilt must be clear and satisfactory. A full and explicit denial of the charge by the defendant and her alleged *particeps criminis* should be regarded as decisive in a case of doubt. *Reid* v. *Reid, 17 N. J. Eq. 101.*

The witnesses who testified for the petitioner as to the incident of May 27th, 1916, were Rens Cartan, petitioner's brother, Mrs. Rens Cartan and Norman Tice, brother of Mrs. Bert Cartan, petitioner's sister-in-law. The vice-chancellor in his opinion sets out fully the facts of the case and also had the benefit of seeing the witnesses and hearing them testify. After reviewing the testimony he says: "The record in the case is so replete with charges, counter-charges and contradictions that pages could be occupied in their mere recital; and while it is assumed that the testimony of the parties is naturally colored by their interests, the prejudice and unfriendliness of Rens Cartan, Mrs. Rens Cartan, Mrs. Bert Cartan and Norman Tice against Devlin and his wife and Mrs. Cartan, the defendant, or one or more of them, is clearly established, and is hardly denied. Mrs. Rens Cartan, in effect, accuses Devlin of having made improper advances to her; Mrs. Bert Cartan practically admits a criminal intimacy with Devlin, and is incensed at Mrs. Devlin for calling her a 'whore' because of this relation. The defendant, Mrs. Cartan, accused Rens Cartan, in the presence of his wife, of improper relations with other women, and he states that she and Devlin corresponded with each other in an apparently friendly way,

which was both hypocritical and deceitful; and Norman Tice, about the spring of 1918, had a lawsuit with Devlin, which produced an unfriendly feeling on his part, and this feeling was intensified by the information he received of Devlin's relations with his sister Mrs. Bert Cartan.

"The bias of these witnesses, who are the parties by whom the charge of adultery is sought to be established, coupled with the concealment of their knowledge of the offence, even on the advice of counsel, for over two years, and the continuance of their intimate, social and business relations with the defendants during all that time, taken in connection with the peculiar conduct of the petitioner after information of his wife's guilt was furnished him, shown by his occupancy of the same house with her, his support of her, his failure to disclose to her until October the knowledge of her guilt obtained by him in May; his willingness to send her to Florida, making the arrangements for her trip and paying her expenses; the service of process in this suit upon her the night before her departure for the south, after they had supper together; his offer to accompany her to the train the following morning; his frequent visits to the house and association with her during the day and evening after her return from the south; the vague and uncertain allegations of his petition, and of the bills of particulars concerning the times and places, when and where the repeated acts of adultery were alleged to have been committed, when in fact he knew that his witnesses at the time when these papers were filed and served had told him that they had seen and therefore actually knew the offence had been committed in the outbuilding in May, 1916, if it in fact had been committed—these features in the case, emphasized by his acquiescence, without remonstrance, in the affection or intimacy he states he observed manifested by the defendants for each other during the past thirteen years, affected as they are by the presumption of condonation, due to his continued residence in the same house with his wife for months after he learned of her guilt; and the proof, such as it is, of cohabitation after May, 1918, tending to establish actual condonation, leaves the record in a most unsatisfactory condition, and has produced upon my

mind, under the guarded discretion with which I have carefully considered every feature of this most troublesome case, such a state of doubt that I am unable to say that I believe the entire story told by any of the parties or their witnesses regarding the intimacy and criminal conduct of the defendants, or in the condonation of their offence by the petitioner; or, in fact, what part of their respective stories, if any, I do believe."

We are not in the same state of doubt as the vice-chancellor expresses in regard to the charge of adultery.

Consideration of the case satisfies us that the petitioner has absolutely failed to prove anything which would justify a court in branding this woman as an adulteress, and that the vice-chancellor was therefore right in dismissing the petition.

There were three letters offered in evidence from Devlin to the defendant, Mrs. Cartan, which the petitioner claimed to be tantamount to a confession of guilt. One was not sent at all; the other two she tore up, she says. Devlin testifies he wrote them from dictation of Rens Cartan. They are couched in language that may suggest that she confesses adultery to her husband or almost anything else. She is requested to go to her husband and "ask him to forgive you for everything." But they are not evidence of her guilt, in the absence of proof that she ratified any statements therein contained.

"Letters written to a person, though evidence against him for some purposes, are not evidence of the truth of their contents unless besides the mere possession of the letters there is testimony from which acquiescence in the truth of their contents can be inferred." *State* v. *MacFarland, 83 N. J. Law 474.*

The defendant in her amended answer sets up condonation. As before stated, we are satisfied that the petitioner has failed to prove the charge of adultery, and unless a wife has broken her marital vows, there can be no such thing as condonation. Consequently, we should not pass on the question of whether the husband had condoned his wife's alleged infidelity, because there can be no such thing as condonation of an offence which has not been committed.

The decree appealed from will be affirmed, with costs.

*For affirmance*—The Chief-Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Gardner, Ackerson, Van Buskirk —14.

*For reversal*—None.